UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Ningbo Chenglu Paper
Products Manufacturing Co., Ltd.,
Appellant

v.

Case No. 11-cv-479-SM
Opinion No. 2012 DNH 133

Momenta, Inc.,
Appellee

**O R D E R**

This is an appeal from a decision of the United States Bankruptcy Court for the District of New Hampshire. In the proceedings below, a creditor, Ningbo Chenglu Paper Products ("Ningbo"), sought payment under Section 503(b)(9) of the Bankruptcy Code for the value of goods it sold to the debtor, Momenta, Inc. ("Momenta") within twenty days before bankruptcy protection was sought. See 11 U.S.C. § 503(b)(9). Section 503(b)(9) entitles a limited class of sellers to priority payment for goods sold to a debtor, so long as the goods were "received by the debtor" during a twenty-day pre-petition period. Id. The bankruptcy court granted Ningbo's motion with respect to the value of goods Ningbo shipped directly to Momenta, but denied Ningbo's request for payment of approximately $140,000 related to goods it shipped, at Momenta's direction, to third parties (Momenta's own customers). Ningbo appeals.

At issue is the meaning of the phrase "received by the debtor," as it is used in Section 503(b)(9). Ningbo contends that, where goods are delivered under a drop-shipment arrangement to a debtor/buyer's customer,[1] commercial reality requires that the phrase "received by the debtor" be broadly construed to include goods "received by the debtor's customer." For obvious reasons, Ningbo urges a broad construction — one that would extend Section 503(b)(9)'s priority provision to all sellers who delivered goods within twenty days before the debtor's petition — i.e., including sellers who do not otherwise possess traditional reclamation rights. Appellant Br., Doc. No. 19, at 4. Momenta, on the other hand, presses for a narrow construction of the term "received" — limiting Section 503(b)(9) as a supplemental remedy to a seller's right of reclamation under Section 546(c)(1). See 11 U.S.C. § 546(c)(1).

**Standard of Review**

Jurisdiction over appeals from final judgments, orders, and decrees issued by the bankruptcy court lies in this court. 28 U.S.C. § 158(a). The bankruptcy court's legal determinations are reviewed de novo. See, e.g., Dahar v. Jackson (In re Jackson),

---

[1] A "drop shipment delivery" is defined as "a manufacturer's shipment of goods directly to the consumer rather than initially to a wholesaler." Black's Law Dictionary (9th ed. 2009).

459 F.3d 117, 121 (1st Cir. 2006); Askenaizer v. Seacoast Redimix Concrete, LLC, 2007 WL 959612, at *1 (D.N.H. March 29, 2007). But its findings of fact are accorded deference and will not be disturbed unless clearly erroneous. Groman v. Watman (In re Watman), 301 F.3d 3, 7 (1st Cir. 2002); Brown v. Reifler, 2008 WL 4722987, at *1 (D.N.H. Oct. 23, 2008). A factual finding "is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

**The Bankruptcy Court's Decision**

Momenta filed its bankruptcy petition on October 23, 2010. During the twenty days preceding that event, seven shipments of goods purchased by Momenta were delivered by Ningbo. At Momenta's direction, three shipments, valued at about $23,000, were delivered to Momenta. Four other shipments (the "drop-shipped goods"), valued at over $140,000, were delivered to Momenta's customers in the United Kingdom and Canada.

On December 6, 2010, Ningbo petitioned the bankruptcy court to allow its "administrative expense" payment claims under

Section 503(b)(9) of the Bankruptcy Code, 11 U.S.C. § 503(b)(9). It sought payment for the full value of all goods shipped during the twenty-day pre-petition period. See 11 U.S.C. § 1129(a)(9)(A) (the holder of an administrative expense claim "will receive . . . cash equal to the allowed amount"). Section 503(b)(9) provides in pertinent part:

> [T]here shall be allowed administrative expenses . . . including . . . the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9) (emphasis added).

Momenta conceded that all seven shipments consisted of goods Ningbo sold to Momenta "in the ordinary course of business." Momenta also conceded that goods delivered directly to it were "received" for purposes of Section 503(b)(9). But it objected to Ningbo's request for payment of the value of the drop-shipped goods, arguing that those goods were not "received by the debtor," but by the debtor's customers. Accordingly, Momenta argued, the statutory language did not literally apply, and should not be construed to apply, given the relationship between Section 503(b)(9) and the development of reclamation seller protection under the Code, as well as the Code's general policy of construing preferences narrowly. The bankruptcy court agreed

that the provision protects only sales of goods subject to reclamation rights, that is, goods delivered to the debtor within the twenty days preceding a buyer's filing for bankruptcy protection.

The bankruptcy court first considered whether the term "received" as used in Section 503(b)(9) should be given the same meaning as "received" as found in the reclamation provision of the Bankruptcy Code, Section 546(c). Bankr. Ct. Mem. Op., Doc. No. 7-3, at 8. Section 546(c) addresses the rights of sellers to reclaim goods which "the debtor . . . received . . . while insolvent." 11 U.S.C. § 546(c).[2] It provides that, with some exceptions, a seller's state-created right of reclamation is protected from the bankruptcy trustee's avoiding powers, so long as the seller's demand for reclamation is filed within a specified time. Id. The section provides, moreover, that "[i]f a seller of goods fails to provide notice in the manner described . . . [it] still may assert the rights contained in section 503(b)(9)." 11 U.S.C. § 546(c)(2).

Given the "language of the Bankruptcy Code, its legislative history, and pre-BAPCPA practice," the bankruptcy court held that

[2] "Reclamation is the right of a seller to recover possession of goods delivered to an insolvent buyer." In re Dana Corp., 367 B.R. 409, 413 (Bankr. S.D.N.Y. 2007).

Sections 503(b)(9) and 546(c) "are related provisions that should be read together," such that the term "received" should be given the same meaning in both sections. Bankr. Ct. Mem. Op., Doc. No. 7-3, at 6-8 (citing In Re Circuit City Stores, Inc., 432 B.R. 225, 229 (Bankr. E.D. Va. 2010)). The court found that Congress intended the sections to operate in tandem to provide enhanced remedies for reclamation sellers: "[Section] 503(b)(9) provides a seller, who did not comply with the notice requirements of § 546(c)(1), an alternative remedy to reclamation." Id. at 6. See also id. at 12 (Section 503(b)(9) "is related to, and a part of the remedies provided under the provisions of § 546(c)").

Construing "received," as it is used in Section 546(c), the bankruptcy court concluded that the term "is the equivalent of 'receipt' in the UCC." Id. at 8. "'[R]eceipt of goods'" under UCC Section 2-103(c) means "'taking physical possession of them.'" Id. (quoting UCC § 2-103(c)). The bankruptcy court found, however, that "possession" for purposes of reclamation can mean actual physical possession or constructive possession, as outlined in U.C.C. § 2-705(2), but that the debtor/buyer in a reclamation situation does not have constructive possession of goods delivered to a third-party good faith purchaser. Id. at 10-12. Such goods, the court held, are not amendable to reclamation, and do not qualify for alternative relief under

Section 503(b)(9). In other words, Section 503(b)(9) was enacted to protect reclamation sellers from minor impediments to Section 546(c) relief. It was not meant to create a new class of sellers entitled to a priority remedy at the expense of other creditors.

Applying that definition of "received" to Ningbo's claim under Section 503(b)(9), the bankruptcy court held that the goods Ningbo drop-shipped directly to Momenta's customers were not "received" by Momenta. Because Momenta did not have possession of those goods, either actual or constructive, id. at 12, no reclamation rights arose and no alternative remedy under Section 503(b)(9) was available.

The bankruptcy court allowed an administrative expense in the amount of $23,079.95, representing the value of goods shipped by Ningbo directly to and received by Momenta, but otherwise denied the claim. Ningbo appealed the bankruptcy court's disallowance of its administrative expense claims for the drop-shipped goods.

**Discussion**

On appeal, Ningbo does not seriously contest the bankruptcy court's construction of the term "received" under Section 546(c). It says, rather, that the bankruptcy court erred in holding that

Section 546(c)'s definition dictates the meaning of "received" as the term as used in Section 503(b)(9). It argues that the commercial reality of drop-shipment arrangements (and the plain language of Section 503(b)(9)) necessarily leads to the conclusion that when goods are delivered, at the debtor's direction, to the debtor's customer, during the twenty-day pre-petition period, those goods are "received" (at least constructively) when the debtor's customer takes possession.

Unsecured creditors who supply goods or services to a debtor pre-petition are generally treated the same. See In re Nichols, 450 B.R. 307, 311 (Bkrtcy. D. Mass. 2011) (bankruptcy creditors of the same class are generally entitled to an "equal and ratable distribution" from the estate), citing Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33 (2008). A preferential exception exists, however, under Section 546(c), for sellers who have valid reclamation claims. 11 U.S.C. Sec. 546(c); Marin Motor, 740 F.2d at 223 (Congress adopted Section 546(c) in 1978 to recognize state law reclamation rights). See also United States v. Westside Bank, 732 F.2d 1258, 1265 (5th Cir. 1984) (allowing "a reclaiming seller a priority claim" under Section 546(c) "[c]learly . . . constitutes preferential treatment against the buyer's general unsecured creditors.") (quotation omitted).

Momenta contends that Section 503(b)(9) does not, and was not intended to, create a new and broad class of preferred claimants. Instead, that section provides a supplemental remedy for those sellers who would be preferred reclamation sellers, but for a minor disqualification under Section 546(a).

Ningbo, on the other hand, says Section 503(b)(9), by its terms, extends priority status to a new and broad class of pre-petition sellers. It argues that goods drop-shipped directly to a debtor's customer are goods "received by the debtor," without regard to the context-specific meaning ascribed to the term "received" under Section 546(c). It points out that, while U.C.C. Section 2-103 defines "receipt of goods" as "taking physical possession of them," the preface to that section cautions that the definition will not apply if "the context otherwise requires." U.C.C. § 2-103(1). In common drop-shipment scenarios, Ningbo says, "received" should be defined in context — in a way that accounts for the commercial reality of drop-shipment arrangements. It points to the fact that drop-shipment arrangements are not only common, but often call for flexibility, and that a buyer's decision to direct delivery to a third-party should not permit the buyer to later deny receipt of the goods. See Appellant's Br., Doc. No. 10, at 11-13, citing U.C.C § 2-310(a) (where there are "open" payment terms, "payment is due at

the time and place at which the buyer is to receive the goods") and U.C.C § 2-705(2)(a) and official comments ("seller may stop delivery until . . . receipt of the goods by the buyer," which includes receipt "by the buyer's . . . subpurchaser").

As a general matter, Ningbo's point is well-taken. That is, in some contexts commercial reality might well counsel application of an expansive definition of "received." But the statutory construction it proposes here does not fit the context. Priorities in bankruptcy, such as the administrative expenses listed in Section 503(b), 11 U.S.C. Sec. 503(b)(1)-(9), stand as discrete exceptions to the general equality principle. As such, they must be strictly construed and be "clearly authorized by Congress." Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co., 547 U.S. 651, 655 (2006). Therefore, Ningbo's claim to priority turns not on "commercial reality" with respect to the delivery of purchased goods, but on whether Congress "clearly authorized" the specific priority Ningbo seeks.[3]

---

[3] In any event, "commercial reality" might not support Ningbo's position. Under familiar rules of the marketplace relating to the relative priorities of creditors, Ningbo could not, at the time it agreed to deliver goods directly to Momenta's customers, have had any expectation that it could reclaim them. Reclamation is generally available only while delivered goods remain in the buyer's possession. Ningbo's suggestion that it would be unfair to exclude those transactions from priority treatment runs counter to "commercial reality" of creditor's rights.

Congress did not define the term "received" as it is used in Section 503(b)(9). Nor is that term defined elsewhere in the Bankruptcy Code.[4] But it appears that Congress intended that the term, as used in Section 503(b)(9), should be construed consistently with the reclamation section of the Code, Section 546(c). As the bankruptcy court correctly noted, changes made to the Bankruptcy Code in 2005 suggest an intent to create a priority administrative expense as a supplemental remedy for reclamation sellers, and not, as Ningbo argues, a priority remedy for all sellers who deliver goods pursuant to a contract with the debtor and within twenty days preceding bankruptcy.

Before the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Section 546(c)(2) allowed a "'court [to] deny reclamation to a seller with such right of reclamation that has made such a demand," but "only if the court'" awarded an administrative expense claim or secured the seller's "'claim by a lien.'" Dana Corp., 367 B.R. at 414 (quoting 11 U.S.C. Sec. 546(c)(2) prior to BAPCPA). In other words, before BAPCPA, an administrative expense priority served

---

[4] Without definitional guidance, the word "received" is ambiguous, since commercial practices and the larger statutory context may suggest different plausible meanings. See Bankr. Ct. Mem. Op., Doc. No. 7-3, at 8 (goods may be "received" when "the risk of loss passes, when title passes, . . . or when a party takes possession of [the goods].")

as an alternative remedy to reclamation, but only if the seller met Section 546(c)'s notice requirement. See In re Microwave Prods. of Am., Inc., 94 B.R. 967, 970 (Bankr. W.D. Tenn. 1989) ("Copyfax failed to comply with the demand requirements, therefore, it is not to be protected by the Court pursuant to Section 546(c) once reclamation is denied.").

In 2005, BAPCPA modified the reclamation rules under an amendatory provision titled "Reclamation." See Sec. 1227 "Reclamation," Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1227(b), 119 Stat. 23, 119-200. The provision deleted language in Section 546(c)(2) authorizing courts to allow an administrative expense claim (i.e., allow a cash payment in lieu of reclamation) where a seller had otherwise made a proper reclamation demand. See In re TI Acquisition, LLC, 410 B.R. 742, 745-46 (Bankr. N.D. Ga. 2009) (detailing legislative changes). It also added new language to Section 546(c) specifying that, even if "a seller of goods fails to provide notice in the manner described [in Section 546(c)(1), it] still may assert the rights contained in Section 503(b)(9)." 11 U.S.C. Sec. 546(c)(2). Finally, it added Section 503(b)(9), providing an administrative priority claim for goods the debtor received within twenty days before bankruptcy. See In re TI Acquisition, 410 B.R. at 746.

As noted, the provision that made these changes was titled "Reclamation." Outside of the provision, BAPCPA made no other reference to Section 503(b)(9)'s new administrative expense remedy. See Frederick J. Glasgow, III, Comment, Reclaiming the Defenses to Reclamation, 26 EMORY BANK. DEV. J. 301, 315 (2010). It seems likely, then, that in creating Section 503(b)(9), Congress meant to expand and clarify the rights of reclamation sellers, but did not intend to quietly create a new and expansive creditor class entitled to a unique priority.

Other courts have reached the same conclusion. See e.g., In re Circuit City, 432 B.R. at 229 ("Both § 503(b)(9) and the amendments to § 546(c) were enacted as part of [BAPCPA] to enhance certain types of reclamation claims.") (quotation omitted); In re Deer, 2007 WL 6887241, at *2 (Bankr. S.D. Miss. June 14, 2007) (Section 503(b)(9) "was adopted to operate[] in conjunction with 11 U.S.C.A. § 546(c)(2) to provide administrative expense treatment to a creditor with reclamation rights even if the seller fails to make a demand.") (quotation omitted); In re TI Acquisition, LLC, 410 B.R. 742, 745 (Bankr. N.D. Ga. 2009) ("The treatment of expenses in Section 503(b)(9) appears to be an outgrowth of the policy that first appeared in 11 U.S.C. § 546(c)"). But see In re Erving Indus. Inc., 432 B.R. 354, 373 (Bankr. D. Mass. 2010) ("'Section 546 does not limit or

control in any way the rights that claimant has under § 503(b)(9)'") (quoting In re Plastech Engineered Prods., Inc., 397 B.R. 828, 838 (Bankr. E.D. Mich. 2008)).

Ningbo insists that Congress could not have intended Section 503(b)(9) to protect only reclamation sellers because neither that Section, by its terms, nor Section 546, require a seller to qualify as a "reclamation" seller in order to invoke the Section 503(b)(9) remedy. That is, Ningbo asserts that (1) under the express terms of Section 546(c), sellers who have not filed a timely reclamation demand can still pursue the Section 503(b)(9) remedy; and (2) sellers who invoke Section 503(b)(9) need not show that the debtor still possesses the delivered goods — a fact essential to a traditional reclamation claim.

Ningbo's argument is plausible, but the factors it relies upon equally suggest a more focused congressional intent, i.e., to provide a supplemental remedy to sellers who, but for a minor deficiency, otherwise would have qualified for reclamation under Section 546(c). It is one thing to say that, for bankruptcy purpose, Congress modified traditional U.C.C. prerequisites to reclamation seller relief; it is quite another to say that it meant to abandon them entirely. Of course, Congress can do either, as it chooses, but there is no clear indication, as there

must be, that Congress intended to create a new and potentially very large class of priority sellers, a class that would likely distort if not completely undermine the Code's general equity principles governing asset distribution.

Ningbo lastly argues that policy reasons support the statutory construction it presses. But each party's proffered construction of "received" promotes some recognized objective of the Bankruptcy Code. For example, were Section 503(b)(9) read broadly to extend priority status to the claims of all sellers who deliver to debtors or third-parties within twenty days before bankruptcy, more trade creditors would likely be "encourage[d] . . . to continue to extend credit to a debtor potentially heading for bankruptcy." In re Arts Dairy, LLC, 414 B.R. 219, 220 (Bankr. N.D. Ohio 2009). On the other hand, a narrow reading of Section 503(b)(9), that reserves its remedy for would-be reclamation sellers, would likely enhance prospects for successful reorganization, while respecting creditor equality principles. Because the debtor must set aside cash to pay priority administrative expenses, the larger the class of creditors entitled to 503(b)(9) relief, the larger the potential cash reserve needed, and the less likely a debtor will successfully reorganize. That is not an insignificant consideration. See In re Plastech Engineered Prods., Inc., 394

B.R. 147, 151 (Bankr. E.D. Mich. 2008) (Section 503(b)(9) "creat[es] a large and potentially insurmountable cash hurdle for a debtor to confirm a plan").

The bankruptcy court correctly concluded that Sections 503(b)(9) and 546 are related statutory provisions enacted for the benefit of reclamation sellers. It also properly determined that the word "received" should be given the same meaning in both sections. See generally United States v. Delgado-Garcia, 374 F.3d 1337, 1347 (D.C. Cir. 2004) (courts should "construe related statutory provisions in similar fashion."). The phrase "received by the debtor" as used in Section 503(b)(9) means: possessed by the debtor, either actually or constructively. The bankruptcy court also correctly held that, under Section 503(b)(9), delivery to, or possession by, a debtor's customer under a drop-shipment arrangement does not constitute constructive possession by the debtor for Section 503(b)(9) purposes.

Because, in this case, Momenta never had actual or constructive possession of the drop-shipped goods, those goods were not "received by the debtor" for purposes of Ningbo's administrative expense claim under Section 503(b)(9), and that claim fails.

## Conclusion

The bankruptcy court's decision denying Ningbo's several administrative expense claims is AFFIRMED in all respects.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

August 29, 2012

cc: David E. LeFevre, Esq.
Charles R. Bennett, Jr., Esq.
Ann M. Dirsa, Esq.
John C. Elstad, Esq.
Geraldine L. Karonis, Esq.